# AMENDMENT NO. 1

## TO CREDIT AGREEMENT

Amendment No. 1 to Credit Agreement (this "**Amendment**") dated as of December 19, 2016 between Wayfare Transoceanic LLC, as Borrower and Third Eye Capital Corporation, as Administrative Agent, Collateral Agent and Payment Agent.

**RECITALS:**

(a) Third Eye Capital Corporation, as administrative agent, collateral agent and payment agent (in each such capacity, together with its successors and permitted assigns, the "**Administrative Agent**") and the financial institutions and other lenders party thereto from time to time (collectively, the "**Lenders**") agreed to make certain credit facilities available to Wayfare Transoceanic LLC (together with its successors and permitted assigns, the "**Borrower**") upon the terms and conditions contained in that certain US$43,300,000 senior secured credit facility agreement among the Borrower, the Administrative Agent and the Lenders dated October 5, 2016 (as amended, restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**");

(b) Each of Todd Michael Capser (the "**Key Man**") and Edward Michael Capser ("**Capser Senior**"), Wayfare Shipping & Offshore Ltd. ("**WSO**"), Wayfare PTI One Inc. ("**PTI One**"), Wayfare PTI Two Inc. ("**PTI Two**"), and each direct or indirect Subsidiary of the Borrower (collectively, together with their respective successors and permitted assigns, the "**Guarantors**" and, together with the Borrower, the "**Obligors**") has guaranteed certain obligations of the Borrower to the Administrative Agent and the Lenders pursuant to, and as more particularly described in: (i) in the case of the Key Man, WSO, PTI One and PTI Two, guaranties dated as of October 6, 2016, and (ii) in the case of Capser Senior, a limited guaranty dated October 6, 2016 (with respect to each Guarantor, its "**Guaranty**");

(c) Pursuant to the provisions of Section 2.09((h)) of the Credit Agreement, the Borrower was required to, on or before November 30, 2016, prepay the outstanding principal of the Term Loan in the amount of $1,600,000, or if greater, the Net Proceeds from any sale of the shares of capital stock of WTC or the assets and properties, tangible or intangible, of WTC subject to the terms and provisions of the Credit Agreement;

(d) The Key Man is the record and beneficial owner of 100% of the membership interests of the Borrower ("**Borrower Securities**"), which interest is pledged to the Administrative Agent and Lenders pursuant to that Share Pledge Agreement dated October 6, 2016 as security for the obligations in the Key Man's Guaranty (the "**Key Man Share Pledge**");

(e) On the date hereof and pursuant to the terms hereof, the Key Man desires to transfer 10% of such Borrower Securities to Capser Senior with the consent of the Administrative Agent, <u>provided</u> the transferred membership interest remains subject to the Key Man Share Pledge, <u>provided,</u> further that Capser Senior immediately thereafter pledges such Borrower Securities to the Administrative Agent and the Lenders on the terms of a Share Pledge Agreement acceptable to the Administrative Agent as security for Capser Senior's obligations in the Capser Senior Guaranty; and

1

TEC000083

(f) The Borrower has requested and Lenders have agreed to amend the provisions of Section 2.09 and certain definitions in the Credit Agreement, subject to the terms and the conditions set forth in this Amendment.

In consideration of the foregoing and other good and valuable consideration, the receipt and adequacy of which are acknowledged, the parties agree as follows:

**Section 1  Interpretation.**

(1) Capitalized terms used in this Amendment but not defined have the meanings given to them in the Credit Agreement.

(2) The division of this Amendment into Sections and other subdivisions and the insertion of headings are for convenient reference only and do not affect its interpretation.

(3) Any reference to any Loan Document in this Amendment refers to such Loan Document as the same may have been to date amended, modified, extended, renewed, restated, replaced or supplemented and includes all schedules attached to it.

**Section 2  Amendment.**

(1) **Definitions.** The definition of "Capser Senior Limited Guaranty" in Section 1.01 of the Credit Agreement is hereby deleted in its entirety and replaced with the following:

""Capser Senior Limited Guaranty" means the unconditional and limited amended and restated guaranty executed by Capser Senior, up to a maximum amount of $26,700,000 with sole recourse to: (i) the Capser Senior Stock Pledge in favor of the Administrative Agent, and (ii) the Securities Portfolio and related Pledge of Securities Portfolio, in substantially the form of Exhibit O hereto, in favor of the Administrative Agent."

(2) **Definitions.** The following definition of "Capser Senior Stock Pledge" is inserted, in the appropriate alphabetical order, in Section 1.01 of the Credit Agreement:

""Capser Senior Stock Pledge" means the share pledge agreement dated December 19, 2016 executed by Capser Senior with respect to the 10% membership interest in the Borrower transferred by the Key Man to Capser Senior on December 19, 2016, which, for the avoidance of doubt, is a "Stock Pledge" as such term is defined in the Credit Agreement."

(3) **Mandatory Prepayments.** Subsection 2.09(h) of the Credit Agreement is hereby deleted in its entirety and replaced with the following:

"The Borrower shall prepay the Net Proceeds from any sale of the shares of capital stock of WTC or the assets and properties, tangible or intangible, of WTC (such amount to be prepaid, the "Designated Term Loan Prepayment"), provided that contemporaneously with such prepayment, the maximum amount of the Capser Senior Limited Guaranty shall be reduced by the amount of such Designated Term Loan Prepayment."

(4) **Financial Covenants.** Subsection 5.04(a) of the Credit Agreement is hereby deleted in its entirety and replaced with the following:

"Securities Portfolio. Maintain, or cause Capser Senior to maintain, at all times, the Securities Portfolio having a value of not less than $24,200,000."

**Section 3**     **Scope of Amendment.**

Subject to the terms and conditions herein contained, the Credit Agreement is hereby amended to the extent necessary to give effect to the provisions of this Amendment and to incorporate the provisions of this Amendment into the Credit Agreement.

**Section 4**     **Representations and Warranties.**

To induce the Administrative Agent to enter into this Amendment, the Borrower represents and warrants to the Administrative Agent and the Lenders as follows, which representations and warranties shall survive the execution and delivery hereof:

(a) all necessary action has been taken to authorize the execution, delivery and performance of this Amendment. This Amendment has been duly executed and delivered by the Borrower and constitutes a legal, valid and binding obligation of it enforceable in accordance with its terms;

(b) the execution and delivery by the Borrower and the performance by it of its obligations under this Amendment will not conflict with or result in a breach of any of the terms or conditions of its constating documents or by-laws, any applicable law or any contractual restriction binding on or affecting it or its assets;

(c) except as disclosed to the Administrative Agent, each of the representations and warranties contained in Article IV of the Credit Agreement and in any other Loan Document are true and correct on the date hereof as if they were made on such date;

(d) no Default or Event of Default exists;

(e) the Credit Agreement, as amended pursuant hereto, and each of the other Loan Documents to which any Obligor is a party remains in full force and effect, unamended, and is enforceable against such Obligor, in accordance with its terms. Each Guaranty continues to guarantee all debts, liabilities and obligations described therein at any time or from time to time due or accruing due and owing by the Borrower to the Administrative Agent and the Lenders pursuant to the Credit Agreement, as amended pursuant hereto, and the security interests, assignments, mortgages, charges, hypothecations and pledges granted by any Obligor in favour of the Administrative Agent continue to secure all debts, liabilities and obligations at any time or from time to time due or accruing due and owing by such Obligor to the Administrative Agent and the Lenders pursuant to the Credit Agreement, as amended pursuant hereto, its Guaranty (as applicable) and the other Loan Documents to which it is party; and

(f) this Amendment constitutes a "Loan Document" for purposes of the Credit Agreement.

**Section 5**     **Effectiveness.**

This Amendment shall become effective upon the following conditions precedent being satisfied:

(a) duly executed signature pages for this Amendment signed by the Borrower and the Administrative Agent shall have been delivered to the Administrative Agent;

(b) the valid transfer of 10% of the Borrower Securities by the Key Man to Capser Senior pursuant to applicable transfer forms, and the issuance of new membership certificates

6523442 v1

TEC000085

     in respect thereof evidencing such transfer and the delivery of such certificates with applicable transfer forms signed in blank delivered to the Administrative Agent, all on terms satisfactory to the Administrative Agent, in its sole discretion;

(c)   the pledge of the 10% of the Borrower Securities by Capser Senior pursuant to a Stock Pledge agreement subject to the Key Man Share Pledge and otherwise acceptable to the Administrative Agent, in its sole discretion;

(d)   Capser Senior entering into an amended and restated limited guaranty, acceptable to the Administrative Agent, in its sole discretion;

(e)   Capser Senior and Bessemer Trust Company, N.A. entering into an amendment to that Account Control Agreement dated September 29, 2016, acceptable to the Administrative Agent, in its sole discretion;

(f)   the filing of all application registration statements applicable to the transfer and pledge of the Borrower Securities and the filing, delivery or execution of all other documents or actions necessary to perfect the Administrative Agent's security interest in the Borrower Securities, in each case acceptable to the Administrative Agent, in its sole discretion; and

(g)   the representations and warranties contained herein shall be true and correct.

**Section 6**   **Reference to and Effect on the Credit Agreement.**

(1)   Upon this Amendment becoming effective, each reference in the Credit Agreement to "this Agreement" and each reference to the Credit Agreement in the other Loan Documents and any and all other agreements, documents and instruments delivered by any of the Lenders, the Administrative Agent, the Borrower or any other Person shall mean and be a reference to the Credit Agreement as amended by this Amendment. The Credit Agreement remains in full force and effect.

(2)   Except to the extent expressly set forth herein, (a) the execution, delivery and effectiveness of this Amendment and any consents and waivers set forth herein shall not directly or indirectly (i) amend, modify or operate as a waiver of any provision of the Credit Agreement or any other Loan Document or any right, power or remedy of the Administrative Agent or any Lender thereunder; or (ii) constitute a course of dealing or other basis for altering any obligations or any other contract or instrument; and (b) the Administrative Agent and the Lenders reserve all of their respective rights, powers and remedies under the Credit Agreement, the other Loan Documents and Applicable Law.

**Section 7**   **Governing Law and Incorporation.**

  This Amendment is governed by, and construed in accordance with, the laws of the State of New York without regard to its conflicts of law rules. Sections 8.12 and 8.14 through and including 8.17 of the Credit Agreement are incorporated herein, *mutatis mutandis*, as if all references therein to "this Agreement" are references to "this Amendment".

**Section 8**   **Counterparts.**

  This Amendment may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original, and all such counterparts together shall constitute one and the same instrument. Transmission of an

executed signature page by facsimile, email or other electronic means is as effective as a manually executed counterpart of this Amendment.

[*signature pages follow*]

IN WITNESS WHEREOF the parties have executed this Amendment.

WAYFARE TRANSOCEANIC LLC.,
as Borrower

By: _____
Authorized Signing Officer

THIRD EYE CAPITAL CORPORATION, as
Administrative Agent

By: _____
Authorized Signing Officer

6

TEC000088

# AMENDMENT NO. 2

## TO CREDIT AGREEMENT

Amendment No. 2 to Credit Agreement (this "**Amendment**") dated as of October 6, 2017 between Wayfare Transoceanic LLC, as Borrower, Third Eye Capital Corporation, as Administrative Agent, Collateral Agent and Payment Agent and the Lenders signatory hereto.

**RECITALS:**

(a) Third Eye Capital Corporation, as administrative agent, collateral agent and payment agent (in each such capacity, together with its successors and permitted assigns, the "**Administrative Agent**") and the financial institutions and other lenders party thereto from time to time (collectively, the "**Lenders**") agreed to make certain credit facilities available to Wayfare Transoceanic LLC (together with its successors and permitted assigns, the "**Borrower**") upon the terms and conditions contained in that certain senior secured credit facility agreement among the Borrower, the Administrative Agent and the Lenders dated October 5, 2016 (as amended, restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**");

(b) Each of Todd Michael Capser (the "**Key Man**") and Edward Michael Capser ("**Capser Senior**"), Wayfare Shipping & Offshore Ltd. ("**WSO**"), Wayfare PTI One Inc. ("**PTI One**"), Wayfare PTI Two Inc. ("**PTI Two**"), and each direct or indirect Subsidiary of the Borrower (collectively, together with their respective successors and permitted assigns, the "**Guarantors**" and, together with the Borrower, the "**Obligors**") has guaranteed certain obligations of the Borrower to the Administrative Agent and the Lenders pursuant to, and as more particularly described in: (i) in the case of the Key Man, WSO, PTI One and PTI Two, guaranties dated as of October 6, 2016, and (ii) in the case of Capser Senior, an amended and restated limited guaranty dated December 19, 2016 (with respect to each Guarantor, its "**Guaranty**");

(c) Pursuant to the provisions of Section 2.06(a) of the Credit Agreement, the Borrower is required to, on or before October 6, 2017, repay a certain amount of the outstanding principal of the Term Loan subject to the terms and provisions of the Credit Agreement; and

(d) The Borrower has requested and Lenders have agreed to waive and amend the repayment requirements in Section 2.06(a) of the Credit Agreement, subject to the terms and the conditions set forth in this Amendment.

In consideration of the foregoing and other good and valuable consideration, the receipt and adequacy of which are acknowledged, the parties agree as follows:

**Section 1    Interpretation.**

(1) Capitalized terms used in this Amendment but not defined have the meanings given to them in the Credit Agreement.

(2) The division of this Amendment into Sections and other subdivisions and the insertion of headings are for convenient reference only and do not affect its interpretation.

- 2 -

(3) Any reference to any Loan Document in this Amendment refers to such Loan Document as the same may have been to date amended, modified, extended, renewed, restated, replaced or supplemented and includes all schedules attached to it.

### Section 2  Initial Term Loan Repayment Waiver.

(1) Based on the information provided to the Administrative Agent and the Lenders by the Borrower, the Borrower reported that it will not be able to repay the Initial Term Loan Repayment Amount on or before the first anniversary of the Closing Date, as required pursuant to Section 2.06(a) of the Credit Agreement, which would constitute an Event of Default under the Credit Agreement (the "**Initial Repayment Violation**").

(2) Subject to the terms of this Amendment, the Administrative Agent and the Lenders waive the Initial Repayment Violation, provided that the Borrower shall be and remain obligated to comply with its obligations as stated in Section 2.06(a) of the Credit Agreement by paying the Initial Term Loan Repayment Amount no later than November 22, 2017.

### Section 3  Scope of Amendment.

Subject to the terms and conditions herein contained, the Credit Agreement is hereby amended to the extent necessary to give effect to the provisions of this Amendment and to incorporate the provisions of this Amendment into the Credit Agreement.

### Section 4  Representations and Warranties.

To induce the Administrative Agent and the Lenders to enter into this Amendment, the Borrower represents and warrants to the Administrative Agent and the Lenders as follows, which representations and warranties shall survive the execution and delivery hereof:

(a) all necessary action has been taken to authorize the execution, delivery and performance of this Amendment. This Amendment has been duly executed and delivered by the Borrower and constitutes a legal, valid and binding obligation of it enforceable in accordance with its terms;

(b) the execution and delivery by the Borrower and the performance by it of its obligations under this Amendment will not conflict with or result in a breach of any of the terms or conditions of its constating documents or by-laws, any applicable law or any contractual restriction binding on or affecting it or its assets;

(c) except as disclosed to the Administrative Agent, each of the representations and warranties contained in Article IV of the Credit Agreement and in any other Loan Document are true and correct on the date hereof as if they were made on such date;

(d) no Default or Event of Default exists;

(e) The waiver contained in Section 2 of this Amendment applies only to the Initial Repayment Violation as specified therein and nothing contained in this Amendment or any other communication between the Administrative Agent, the Lenders and the Borrower (or any other Obligor) shall be a consent to or waiver of any present or future violation, Default or Event of Default under the Credit Agreement or other Loan Document (collectively, "**Other Violations**"). Similarly, nothing contained in this Amendment shall directly or indirectly in any way whatsoever either: (i) impair, prejudice or otherwise adversely affect the Administrative Agent's or the Lenders'

TEC000090

- 3 -

        rights at any time to exercise any right, privilege or remedy in connection with the Credit Agreement or any other Loan Document with respect to any Other Violations (including, without limiting the generality of the foregoing, in respect of the non-conformity to any representation, warranty or covenant contained in any Loan Documents), (ii) amend or alter any provision of the Credit Agreement or any other Loan Document or any other contract or instrument, or (iii) constitute any course of dealing or other basis for altering any obligation of the Borrower or any other Obligor under the Loan Documents or any right, privilege or remedy of the Administrative Agent or the Lenders under the Credit Agreement or any other Loan Document or any other contract or instrument with respect to Other Violations.

(f)     the Credit Agreement, as amended pursuant hereto, and each of the other Loan Documents to which any Obligor is a party remains in full force and effect, unamended, and is enforceable against such Obligor, in accordance with its terms. Each Guaranty continues to guarantee all debts, liabilities and obligations described therein at any time or from time to time due or accruing due and owing by the Borrower to the Administrative Agent and the Lenders pursuant to the Credit Agreement, as amended pursuant hereto, and the security interests, assignments, mortgages, charges, hypothecations and pledges granted by any Obligor in favour of the Administrative Agent continue to secure all debts, liabilities and obligations at any time or from time to time due or accruing due and owing by such Obligor to the Administrative Agent and the Lenders pursuant to the Credit Agreement, as amended pursuant hereto, its Guaranty (as applicable) and the other Loan Documents to which it is party; and

(g)     this Amendment constitutes a "Loan Document" for purposes of the Credit Agreement.

**Section 5**    **Effectiveness.**

This Amendment shall become effective upon the following conditions precedent being satisfied:

(a)     duly executed signature pages for this Amendment signed by the Borrower shall have been delivered to the Administrative Agent;

(b)     the Borrower shall have paid to the Administrative Agent in full all fees and expenses then due and payable to the Administrative Agent and the Lenders, including a consent and waiver fee of $100,000 which shall be non-refundable and fully earned as of the date hereof; and

(c)     the representations and warranties contained herein shall be true and correct.

**Section 6**    **Reference to and Effect on the Credit Agreement.**

(1)    Upon this Amendment becoming effective, each reference in the Credit Agreement to "this Agreement" and each reference to the Credit Agreement in the other Loan Documents and any and all other agreements, documents and instruments delivered by any of the Lenders, the Administrative Agent, the Borrower or any other Person shall mean and be a reference to the Credit Agreement as amended by this Amendment. The Credit Agreement remains in full force and effect.

(2)    Except to the extent expressly set forth herein, (a) the execution, delivery and effectiveness of this Amendment and any consents and waivers set forth herein shall not directly or indirectly (i) amend, modify or operate as a waiver of any provision of the Credit Agreement or any other

TEC000091

- 4 -

Loan Document or any right, power or remedy of the Administrative Agent or any Lender thereunder; or (ii) constitute a course of dealing or other basis for altering any obligations or any other contract or instrument; and (b) the Administrative Agent and the Lenders reserve all of their respective rights, powers and remedies under the Credit Agreement, the other Loan Documents and applicable Law.

**Section 7     Governing Law and Incorporation.**

This Amendment is governed by, and construed in accordance with, the laws of the State of New York without regard to its conflicts of law rules. Sections 8.12 and 8.14 to 8.17 of the Credit Agreement are incorporated herein, *mutatis mutandis*, as if all references therein to "this Agreement" are references to "this Amendment".

**Section 8     Counterparts.**

This Amendment may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original, and all such counterparts together shall constitute one and the same instrument. Transmission of an executed signature page by facsimile, email or other electronic means is as effective as a manually executed counterpart of this Amendment.

*[signature pages follow]*

TEC000092

IN WITNESS WHEREOF the parties have executed this Amendment.

WAYFARE TRANSOCEANIC LLC.,
as Borrower

By: _____
Authorized Signing Officer

THIRD EYE CAPITAL CORPORATION, as
Administrative Agent

By: _____
Arif N. Bhalwani
Managing Director

I, Edward Michael Capser, acknowledge the terms of the Amendment, and ratify and reaffirm that amended and restated limited guaranty provided by me and dated December 19, 2016, as may be amended from time to time, and each of the terms and provisions contained therein.

_____
EDWARD MICHAEL CAPSER

- 6 -

THIRD EYE CAPITAL CREDIT
OPPORTUNITIES FUND – INSIGHT FUND
by its Managing General Partner THIRD
EYE CAPITAL CREDIT OPPORTUNITIES
S.A.R.L., as Lender

By: _____ Paul de Quant
Authorized Signing Officer    Director

By: _____
Authorized Signing Officer    Richard GODDARD
                              Manager

THIRD EYE CAPITAL ALTERNATIVE
CREDIT TRUST by its Manager, THIRD
EYE CAPITAL MANAGEMENT INC., as
Lender

By: _____
Arif N. Bhalwani
Portfolio Manager

MBI/TEC PDO1 US, L.P. by its General
Parner, MBI/TEC US PORTFOLIO GP
INC., as Lender

By: _____
Arif N. Bhalwani
President

6523442 v1

TEC000094

## AMENDMENT NO. 3

## TO CREDIT AGREEMENT

Amendment No. 3 to Credit Agreement (this "**Amendment**") dated as of December 20, 2017 between Wayfare Transoceanic LLC, as Borrower and Third Eye Capital Corporation, as Administrative Agent, Collateral Agent and Payment Agent.

**RECITALS:**

(a) Third Eye Capital Corporation, as administrative agent, collateral agent and payment agent (in each such capacity, together with its successors and permitted assigns, the "**Administrative Agent**") and the financial institutions and other lenders party thereto from time to time (collectively, the "**Lenders**") agreed to make certain credit facilities available to Wayfare Transoceanic LLC (together with its successors and permitted assigns, the "**Borrower**") upon the terms and conditions contained in that certain senior secured credit facility agreement among the Borrower, the Administrative Agent and the Lenders dated October 5, 2016 and as amended December 19, 2016 and October 6, 2017 (as further amended, restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**");

(b) Each of Todd Michael Capser (the "**Key Man**") and Edward Michael Capser ("**Capser Senior**"), Wayfare Shipping & Offshore Ltd. ("**WSO**"), Wayfare PTI One Inc. ("**PTI One**"), Wayfare PTI Two Inc. ("**PTI Two**"), and each direct or indirect Subsidiary of the Borrower (collectively, together with their respective successors and permitted assigns, the "**Guarantors**" and, together with the Borrower, the "**Obligors**") has guaranteed certain obligations of the Borrower to the Administrative Agent and the Lenders pursuant to, and as more particularly described in: (i) in the case of the Key Man, WSO, PTI One and PTI Two, guaranties dated as of October 6, 2016, and (ii) in the case of Capser Senior, a limited guaranty dated October 6, 2016 as amended and restated on December 19, 2016 (the "**Capser Senior Limited Guaranty**", and with respect to each Guarantor, its "**Guaranty**");

(c) As referenced in that Default Letter dated November 22, 2017 delivered by the Administrative Agent to, and acknowledged by, the Borrower, the Obligors are in default pursuant to the terms of the Credit Agreement as a result of the Events of Default listed in the Default Letter, which list is not meant to be exhaustive and which remain uncured as of the date hereof (the "**Specified Defaults**"); and

(d) The Borrower has requested and Lenders have agreed to amend the terms of the Capser Senior Limited Guaranty, the Pledge of Securities Portfolio, that Deposit Account Control Agreement with respect to Capser Senior and the financial covenants in the Credit Agreement with respect to the Securities Portfolio in Section 5.04(a) of the Credit Agreement, subject to the terms and the conditions set forth in this Amendment.

In consideration of the foregoing and other good and valuable consideration, the receipt and adequacy of which are acknowledged, the parties agree as follows:

**Section 1**     **Interpretation.**

(1) Capitalized terms used in this Amendment but not defined have the meanings given to them in the Credit Agreement.

(2) The division of this Amendment into Sections and other subdivisions and the insertion of headings are for convenient reference only and do not affect its interpretation.

(3) Any reference to any Loan Document in this Amendment refers to such Loan Document as the same may have been to date amended, modified, extended, renewed, restated, replaced or supplemented and includes all schedules attached to it.

**Section 2**     **Amendments.**

(1) **Definitions.** The definition of "Capser Senior Limited Guaranty" in Section 1.01 of the Credit Agreement is hereby deleted in its entirety and replaced with the following:

"Capser Senior Guaranty" means the unconditional and unlimited second amended & restated guaranty executed by Capser Senior with sole recourse to: (i) the Capser Senior Stock Pledge in favor of the Administrative Agent, and (ii) the Securities Portfolio and related Pledge of Securities Portfolio, in favor of the Administrative Agent."

(2) **Financial Covenants.** Subsection 5.04(a) of the Credit Agreement is hereby deleted in its entirety and replaced with the following:

"Securities Portfolio. Maintain, or cause Capser Senior to maintain, at all times, the Securities Portfolio having a value of not less than $30,000,000."

**Section 3**     **Scope of Amendment.**

Subject to the terms and conditions herein contained, the Credit Agreement is hereby amended to the extent necessary to give effect to the provisions of this Amendment and to incorporate the provisions of this Amendment into the Credit Agreement.

**Section 4**     **Representations and Warranties.**

To induce the Administrative Agent and the Lenders to enter into this Amendment, the Borrower represents and warrants to the Administrative Agent and the Lenders as follows, which representations and warranties shall survive the execution and delivery hereof:

(a) all necessary action has been taken to authorize the execution, delivery and performance of this Amendment. This Amendment has been duly executed and delivered by the Borrower and constitutes a legal, valid and binding obligation of it enforceable in accordance with its terms;

(b) the execution and delivery by the Borrower and the performance by it of its obligations under this Amendment will not conflict with or result in a breach of any of the terms or conditions of its constating documents or by-laws, any applicable law or any contractual restriction binding on or affecting it or its assets;

(c) except as disclosed to the Administrative Agent, each of the representations and warranties contained in Article IV of the Credit Agreement and in any other Loan Document are true and correct on the date hereof as if they were made on such date;

(d) no Default or Event of Default exists other than the Specified Defaults;

(e) Nothing contained in this Amendment shall directly or indirectly in any way whatsoever either: (i) impair, prejudice or otherwise adversely affect the Administrative Agent's or the Lenders' rights at any time to exercise any right, privilege or remedy in connection with the Credit Agreement or any other Loan Document (including, without limiting the generality of the foregoing, in respect of the non-conformity to any representation, warranty or covenant contained in any Loan Documents), (ii) amend or alter any provision of the Credit Agreement or any other Loan Document or any other contract or instrument, or (iii) constitute any course of dealing or other basis for altering any obligation of the Borrower or any other Obligor under the Loan Documents or any right, privilege or remedy of the Administrative Agent or the Lenders under the Credit Agreement or any other Loan Document or any other contract or instrument.

(f) the Credit Agreement, as amended pursuant hereto, and each of the other Loan Documents to which any Obligor is a party remains in full force and effect, unamended, and is enforceable against such Obligor, in accordance with its terms. Each Guaranty continues to guarantee all debts, liabilities and obligations described therein at any time or from time to time due or accruing due and owing by the Borrower to the Administrative Agent and the Lenders pursuant to the Credit Agreement, as amended pursuant hereto, and the security interests, assignments, mortgages, charges, hypothecations and pledges granted by any Obligor in favour of the Administrative Agent continue to secure all debts, liabilities and obligations at any time or from time to time due or accruing due and owing by such Obligor to the Administrative Agent and the Lenders pursuant to the Credit Agreement, as amended pursuant hereto, its Guaranty (as applicable) and the other Loan Documents to which it is party; and

(g) this Amendment constitutes a "Loan Document" for purposes of the Credit Agreement.

**Section 5    Effectiveness.**

This Amendment shall become effective upon the following conditions precedent being satisfied:

(a) duly executed signature pages for this Amendment signed by the Borrower shall have been delivered to the Administrative Agent;

(b) Capser Senior entering into and delivering the Capser Senior Guaranty, and amendments to each of the Pledge of Securities Portfolio and Deposit Account Control Agreement, each dated the date hereof, acceptable to the Administrative Agent, in its sole discretion;

(c) the Borrower shall have paid to the Administrative Agent in full all fees and expenses then due and payable to the Administrative Agent and the Lenders, including a consent and waiver fee of $100,000 which shall be non-refundable and fully earned as of the date hereof; and

(d) the representations and warranties contained herein shall be true and correct.

**Section 6**  **Reference to and Effect on the Credit Agreement.**

(1) Upon this Amendment becoming effective, each reference in the Credit Agreement to "this Agreement" and each reference to the Credit Agreement in the other Loan Documents and any and all other agreements, documents and instruments delivered by any of the Lenders, the Administrative Agent, the Borrower or any other Person shall mean and be a reference to the Credit Agreement as amended by this Amendment. The Credit Agreement remains in full force and effect.

(2) Except to the extent expressly set forth herein, (a) the execution, delivery and effectiveness of this Amendment and any consents and waivers set forth herein shall not directly or indirectly (i) amend, modify or operate as a waiver of any provision of the Credit Agreement or any other Loan Document or any right, power or remedy of the Administrative Agent or any Lender thereunder; or (ii) constitute a course of dealing or other basis for altering any obligations or any other contract or instrument; and (b) the Administrative Agent and the Lenders reserve all of their respective rights, powers and remedies under the Credit Agreement, the other Loan Documents and applicable Law.

**Section 7**  **Governing Law and Incorporation.**

This Amendment is governed by, and construed in accordance with, the laws of the State of New York without regard to its conflicts of law rules. Sections 8.12 and 8.14 to 8.17 of the Credit Agreement are incorporated herein, *mutatis mutandis*, as if all references therein to "this Agreement" are references to "this Amendment".

**Section 8**  **Counterparts.**

This Amendment may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original, and all such counterparts together shall constitute one and the same instrument. Transmission of an executed signature page by facsimile, email or other electronic means is as effective as a manually executed counterpart of this Amendment.

*[signature pages follow]*

6523442 v1

TEC000098

IN WITNESS WHEREOF the parties have executed this Amendment.

WAYFARE TRANSOCEANIC LLC.,
as Borrower

By: _____
Authorized Signing Officer

THIRD EYE CAPITAL CORPORATION, as
Administrative Agent

By: _____
Arif N. Bhalwani
Managing Director

I, Edward Michael Capser, acknowledge the terms of this Amendment and the delivery by me of the Capser Senior Second Amended & Restated Guaranty and other amendments indicated herein above, dated the date hereof.

_____
EDWARD MICHAEL CAPSER

TEC000099