William D. Lamdin, III
Pamela C. Garman
CROWLEY FLECK PLLP
490 North 31st Street, Suite 500
P.O. Box 2529
Billings, MT 59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 256-0277
blamdin@crowleyfleck.com
pgarman@crowleyfleck.com

*Attorneys for Third Eye Capital Corporation*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| THIRD EYE CAPITAL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>TODD MICHAEL CAPSER; EDWARD MICHAEL CAPSER; and JOHN DOES 1-5,<br><br>Defendants. | Cause No. CV 19-38-BLG-SPW-TJC<br><br>**PLANTIFF'S PRELIMINARY PRETRIAL STATEMENT** |

Plaintiff Third Eye Capital Corporation ("TEC") submits the following preliminary pretrial statement pursuant to L.R. 16.2(b)(1).

A.  **BRIEF FACTUAL OUTLINE OF THE CASE**

This action is one for enforcement of commercial guarantee agreements and for fraud and civil conspiracy. TEC entered into a series of agreements with Defendants Todd and Edward Capser. On or about October 5, 2016, TEC, as Administrative Agent on behalf of the Lenders, extended a loan to Wayfare Transoceanic LLC, in the principle amount of $43,300,000, pursuant to the Senior Secured Credit Facility Agreement ("Credit Agreement"). As inducement to acquire the loan under the Credit Agreement, Todd Capser executed and delivered to TEC a Key Man Guarantee, wherein he promised the complete payment and performance of all "Guaranteed Obligations" of the "Loan Parties" to TEC arising under the Credit Agreement. The Key Man Guaranty is dated October 6, 2016.

Edward Michael Capser similarly executed and delivered to TEC a Capser Senior Limited Guaranty, dated October 6, 2016. Under this Guaranty, Edward Michael Capser unconditionally and irrevocably guaranteed and promised complete payment and performance of all "Guaranteed Obligations" of the "Loan Parties" to the "Administrative Agent," TEC, arising under the Credit Agreement. This Guaranty was limited to $25,000,000, pursuant to the terms of the Capser Senior Limited Guaranty. This Guaranty was amended, on or about December 19, 2016, by the Capser Senior Amended & Restated Limited Guaranty, and further amended on or about December 20, 2017, by the Capser Senior Second Amended

& Restated Guaranty. The Capser Senior Limited Guaranty, as amended removed the monetary limitation on Edward Michael Capser's Guaranteed Obligations

Pursuant to the terms of the Credit Agreement, Edward Michael Capser entered into the Capser Senior Pledge Agreement and Account Control Agreement with TEC as the Administrative Agent. Through the Capser Senior Pledge Agreement, Edward Michael Capser granted the Administrative Agent a security interest in certain purported financial assets, including the "Pledged Account," as collateral for the Credit Agreement. This Pledged Account referred to an account held by Edward Michael Capser with Bessemer Trust Company, N.A. ("Bessemer Trust").

Todd Capser provided the Administrative Agent with a fabricated account statement regarding the supposed value of the underlying securities in the Pledged Account, falsely identified as being held with Bessemer Trust. Each day, a fabricated daily report was delivered to TEC purporting to show the market value of the Pledged Account. The Account Control Agreement and subsequent amendments contained signatures represented by Todd Capser and/or Edward Michael Capser to be signatures of a Bessemer Trust Employee.

In December, 2018, Bessemer Trust informed TEC that Edward Michael Capser did not have and had never had an account with Bessemer Trust and that the Pledged Account did not exist. The signatures on the Account Control

Agreement and subsequent amendments were not signed by Bessemer Trust employees.

Ultimately, TEC relied on this series of agreements and material representations from Defendants and their joint efforts in committing this fraud. TEC had frequent communications with Todd Capser regarding the status of the collateral and the operations of the Borrower's business and refinancing. TEC Based on the these significant and material fraudulent representations and actions, TEC has incurred significant damages.

## B. BASIS FOR JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. § 1332 based on complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Defendants are both citizens and residents of Billings, Montana. TEC is an Ontario corporation, with its principal place of business in Toronto, Canada.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). Defendants both reside in Billings, Montana and a significant number of the acts giving rise to the claims occurred within the Billings Division in Montana.

## C & D. FACTUAL AND LEGAL BASIS FOR CLAIMS

A showing of fraud is based on:

(1) a representation; (2) the falsity of that representation; (3) the materiality of the representation; (4) the speaker's knowledge of the

> representation's falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance upon the truth of the representation; (8) the hearer's right to rely upon the representation; and (9) the hearer's consequent and proximate injury or damages caused by their reliance on the representation.

*Morrow v. Bank of Am., N.A.*, 375 Mont. 38, 55 (2014). The Defendants and/or with others conspired together to obtain the Credit Agreement and committed fraud in effectuating that conspiracy. The elements of civil conspiracy are "(1) two or more persons, and for this purpose, a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Cen-Dak Leasing, Inc. v. M*orris, 317 Mont. 532 (2003).

On Count I and II, Defendants entered into a series of agreements, including guaranty agreements, account control agreements, and pledge agreements with the Loan Partes, and TEC as the Administrative Agent. The purpose of these agreements was to obtain the Credit Agreement. Defendants represented the purported existence of a securities portfolio through representations to TEC and others. These representations included fabricated account statements and daily account balances, electronic and verbal communications about the fabricated account, among others. These representations were false. Defendants knew these representations were false, including their knowledge that Edward Michael Capser

did not have a securities portfolio with Bessemer Trust and particularly not one with a value that exceeded $22,500,000.00 as indicated in their representations. Plaintiffs signed a series of agreements and provided the false representations with the intent to enter into the Credit Agreement and intended that TEC would act based on these false representations. TEC was unaware of the falsity of these representations and relied on them throughout these transactions related to the Credit Agreement and in effectuating the Credit Agreement. TEC had a right to rely on these representations and documents provided by Defendants and has incurred significant damage as a result.

To effectuate this fraud, Defendants conspired together, and potentially with others, to provide these false representations to TEC and the Loan Parties. Defendants worked together to sign and enter into their respective Guaranty Agreements and related agreements, including pledge agreements and account control agreements, and knew these documents and representations were made for the purpose of securing the Credit Agreement. Defendants signed agreements they knew included false representations. Defendants committed fraud through these transactions and in obtaining the Credit Agreement and as a result, TEC has incurred damages resulting from their actions.

On Count III, Defendants each unconditionally and irrevocably guaranteed and promised complete payment and performance of all "Guaranteed Obligations"

of the "Loan Parties" to the "Administrative Agent," TEC, arising under the Credit Agreement pursuant to their Guaranty Agreements.

On Edward Michael Capser's Counterclaim against TEC, TEC incorporates the following defenses in addition to the denials in TEC's Answer to the Counterclaim. Defendant fails to state a claim upon which relief can be granted. The claim is not supported under state law based or based the facts alleged in the Counterclaim. Further, Defendant's Counterclaim is barred by the doctrines of waiver, estoppel, and unclean hands.

**E.     COMPUTATION OF DAMAGES**

As of December 6, 2018, the following amounts were due and payable to TEC under the Guaranties as follows:

**Agreement:**
Principal          $42,338,506.80
Interest           $83,517.06
Default Interest   $69,597.60

**Revolving Credit Advances:**
Principal          $1,048,195.02
Interest           $2,627.70
Default Interest   $1,732.02

Together with interest accruing in the amount of $26,566.81 per day, beginning on December 7, 2018 and continuing until the date of payment of all amounts due under the Agreement.

It has been necessary for TEC to employ counsel to prosecute this action and

to collect under the Guaranties, and TEC is obligated to pay its attorneys a reasonable attorney fee for the service rendered. TEC is entitled to recover reasonable fees and expenses from Guarantors based on the terms of the Guaranty agreements. The construction and interpretation of a contract is a question of law to be determined by a court.

**F.     RELATED LITIGATION**

Todd Capser has pled guilty to charges in a criminal case in the Southern District of New York on related criminal charges. *USA v. Capser*, Case No. 1:19-cr-00337-JPO (S.D. N.Y. 2019).

**G.     PROPOSED STIPULATIONS**

Parties have filed a Statement of Stipulated Facts.

**H.     PROPOSED DEADLINES FOR JOINDER/AMENDMENT**

Parties have agreed to have until November 22, 2019 to add parties or amend pleadings.

**I.     CONTROLING ISSUES OF LAW SUITABLE FOR PRETRIAL DISPOSITION**

At this preliminary stage, TEC anticipates there will likely be controlling issues of law that may be suitable for pretrial disposition.

**J.     INDIVIDUALS WITH INFORMATION**

1. Todd Michael Capser
2. Edwards Michael Capser
3. Mark Horrox

4. Arif N. Bhalwani
5. Puja Kumar

K. **INSURANCE AGREEMENT**

TEC is not aware of any insurance agreements covering this matter.

L. **SETTLEMENT/PROSPECTS FOR COMPROMISE**

No settlement discussions have taken place, and any settlement prospects will not be known until parties have had an opportunity for further discovery.

M. **SPECIAL PROCEDURES**

Plaintiffs are not aware of any special procedures necessary in this matter.

DATED this 17th day of October, 2019.

    CROWLEY FLECK PLLP

    By /s/ *William D. Lamdin, III*
    William D. Lamdin, III
    Pamela C. Garman
    P.O. Box 2529
    Billings, MT  59103-2529
    Telephone: (406) 252-3441
    blamdin@crowleyfleck.com
    pgarman@crowleyfleck.com
    *Attorneys for Third Eye Capital Corp.*